FIRST NAT. BANK OF FULTON, KY., *v.* GUY B. HOWARD *et al.*

(*Jackson.*   April Term, 1923.)

1. **STATUTES.**  Provision requiring certificate of officer of other State taking acknowledgment held within title of act.

   Public Acts 1919, chapter 48, sections 3-5, requiring certificate of authority of officer of other State to take acknowledgments to be attached to the acknowledgment to entitle the acknowledged instrument to be recorded or read in evidence, *held*, within title of act reading "An act to provide a uniform form of acknowledgment for the authentication or acknowledgment for record of written instruments," under Constitution, article 2, section .17, requiring the subject of an act to be expressed in the title. (*Post, pp.* 190-192.)

   Acts cited and construed:  Acts 1919, ch. 48, secs. 3-5;  Acts 1875, ch. 42.

   Cases cited and approved: Cannon v. Mathes, 55 Tenn., 504; Railroad v. Transportation Co., 128 Tenn., 277; Carroll v. Alsup, 107 Tenn., 257; Ryan v. Terminal Co, 102 Tenn., 111.

   Case cited and distinguished:  House v. Creveling, 147 Tenn., —.

   Constitution cited and distinguished:  Art. 2, sec. 17.

2. **ACKNOWLEDGMENT.**  Statutes requiring certificate of authority of officer of other State taking acknowledgment to be attached to acknowledgment held not to circumscribe authority of officers previously authorized to take acknowledgments.

   Public Acts 1919, chapter 48, sections 3-5, requiring certificate of authority of officer of other State taking acknowledgment to be attached to the acknowledgment to entitle the acknowledged instrument to be recorded or used as evidence, does not circumscribe the authority of any officer previously authorized to take acknowledgments, such as clerks of courts of record and notaries public, but assumes the existence of probate officers in other States not recognized by the statutes, and confers upon them the authority to take and certify acknowledgments upon compliance with the provisions of the act, and applies merely to justices of the peace, recorders, town clerks, and others among the class of officers re-

First Nat. Bank v. Howard.

ferred to in section 3, authorized by the statutes of their States to take acknowledgments and upon whom the statutes of Tennessee did not prior to the enactment of such act confer such authority, in view of Shannon's Code, sections 3748, 3750. (*Post, pp.* 192-194.)

Acts cited and construed: Acts 1831, ch. 90, sec. 9;) Acts 1839, ch. 26, secs. 2, 3; Acts 1920, ch. 20; Acts 1919, ch. 48, secs. 3-5.

Code cited and construed: Secs. 3715, 3748 (S.).

3. **STATUTES.** Construed according to legislative intention viewing entire statute, contemporaneous circumstances, and evils sought to be remedied.

A statute will be construed according to the intention of the legislature ascertained by a view of the entire statute, and of other statutes *in pari materia*, and by a consideration of the contemporaneous circumstances, the facts which induced the new law, and the evils sought to be remedied. (*Post, pp.* 194, 195.)

FROM OBION.

Appeal from the Chancery Court of Obion County.— HON. V. H. HOLMES, Chancellor.

W. M. MILES, for the bank.

PARKS & BELL, for N. W. Mut. Life Ins. Co.

MOORE & HUDGINS, for defendant.

MR. JUSTICE COOK delivered the opinion of the court.

The First National Bank of Fulton Ky., holder of three notes aggregating $6,189.90, brought this action in Obion county to enforce payment.

The fact of Howard's nonresidence was alleged, and attachment prayed, issued, and levied upon his interest in forty acres of land in Obion county, and two hundred and twenty-seven acres in Dyer county.

It is conceded by complainant that the claim of Ed. Thomas constituted a lien superior to its right as an attaching creditor upon the forty acre tract, but it is insisted that the attachment impressed a lien upon both tracts superior to the rights of Mrs. Lou A. Reeds' heirs, the Northwestern Mutual Life Insurance Company, and C. A. Carmire, to whom conveyances were executed by Howard on the dates of December 31, 1920, November 6, 1921, April 20, 1921, and January 12, 1922.

The conveyances were acknowledged before, and authenticated by, a notary public of another State, and duly recorded in the county where the land lies before complainant's bill was filed.

Complainant insists that the official character of the notary public should have been certified as provided in section 5 of chapter 48 of the Acts of 1919, to authorize registration of the deeds, and constitute notice under section 3750 and other sections of Shannon's Code.

A demurrer was interposed by defendants C. A. Carmire, Mrs. Lou A. Reeds' heirs, and the Northwestern Mutual Life Insurance Company, and sustained by the chancellor. Error is assigned upon his action in sustaining the fifth ground of demurrer, holding the act obnoxious to article 2, section 17, of the Constitution, which provides:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws,

shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

The title of the act as shown by the engrossed copy is "An act to provide a uniform form of acknowledgment for the authentication or acknowledgment for record of written instruments." The purpose expressed is to provide uniformity in the methods of acknowledgment and authentication of written instruments for registration under our recording acts. Under this title the body of the act may include any number of related provisions reasonably expressive of, and legitimately connected with, the subject expressed in the caption.

Recently Chief Justice GREEN, in *House* v. *Creveling,* 147 Tenn., 589, 250 S. W. 357, epitomized the authorities upon this subject as follows:

"It has been held in Tennessee since *Cannon* v. *Mathes,* 55 Tenn. (8 Heisk.), 504, that the generality of a title is not objectionable if not made a cover for legislation incongruous in itself, and that the legislature must determine for itself how broad and comprehensive the object of the statute shall be.   .   .   ."

Chapter 42 of the acts of 1875 and amendments thereto embodies most of the corporation law of Tennessee, and the validity of this statute has not been seriously questioned. *Railroad* v. *Transportation Co.,* 128 Tenn., 277.

"In *Carroll* v. *Alsop,* 107 Tenn., 257, a revenue bill with all its many provisions was held to contain but one subject.

"Our uniform statutes, the Negotiable Instruments Law, the Sales Law, the Partnership Law, and others are

of the widest range, and cover'' much detail, ''and yet their validity is not questioned.''

As stated in *Ryan* v. *Terminal Co.*, 102 Tenn., 111, 50 S. W., 744, 45 L. R. A., 303, whether the provisions of an act are congruous and germane to the purpose expressed in the title must be determined by an application of well-recognized rules to the particular act, and subjecting this act to such a test, it cannot be said that the body of the act is broader than the caption, or that it violates article 2, section 17, in any respect. It does not undertake to directly repeal, or to amend, the former laws on the subject, but merely provides cumulative methods for the acknowledgment and authentication of written instruments.

The other assignments of error invite attention to the meaning and application of the act. This act does not circumscribe the authority of any officer previously authorized to take and authenticate the acknowledgment of a written instrument, but assumes the existence of probate officers in other States not recognized by our statutes, and confers upon them the authority to take and certify acknowledgments, upon compliance with the provisions of the act. Such is the intention clearly expressed in section 3, which provides that written instruments may be acknowledged before, and authenticated by ''any officer'' of another State ''authorized by the laws thereof to take'' acknowledgments, and such instruments so acknowledged shall be entitled to registration ''in the same manner, and with like effect as . . . acknowledgments taken before any of the officers now authorized by law to take such . . . acknowledgments and whose authority to do so is not intended to be hereby affected,''

and by section 4, which provides that when such officers, of another State, take an acknowledgment, there shall be subjoined to their certificate the certificate of the Secretary of State, or of a clerk of a court of record, verifying the official authority, and the signature, of such probate officer, as provided in section 5. Section 3 expressly disclaims any intention of interfering with the authority of probate officers, authorized by existing laws, to take and certify acknowledgments.

When the act was passed our statutes provided:

"If" any "person executing the instrument resides or is beyond . . . the limits of the State, but within the" United States "or its territories, the acknowledgment may be made before any court of record, or before the clerk of any court of record, . . . or before a notary public of such state or territory." Chapter 90, section 9, Acts 1831; Chapter 26, sections 2, 3, Acts 1839; Shannon's Code, section 3715.

Before the enactment of the Uniform Acknowledgments Law, and after repeal of chapter 20, Acts 1820, in order to give effect to conveyances under our recording acts, section 3748 and others of Shannon's Code, it was necessary to conform to our statutes, both as to the officers who took the acknowledgment, and the methods of verification. There was more or less of confusion among the States in the methods and forms of acknowledgment and authentication of deeds. By means of a uniform statute, providing cumulative methods and forms of proving written instruments, the legislature sought to prevent, or to minimize, the confusion incident to these varying forms and methods without impairing our own system

which through time and experience had become familiar to those within the State.

The object of the interpretation and construction of a statute is to find and adopt the purpose of the lawmakers, and give force to their intention. This is accomplished by a view of the entire statute, and of other statutes *in pari materia.* Besides which the existing state of the law, the contemporaneous circumstances, the facts which induced the new law, and the evil sought to be remedied must be considered.

It would be contrary to the clearly expressed intention of the legislature, and to recognized canons of construction, to conclude that the Secretary of State, or the clerk of a court of record, shall certify to the legal authority and official signature of courts of record, clerks of courts of record, and notaries public, authorized by pre-existing law to take acknowledgments and verify them under their seal.

The certificate required by section 5 of the act applies to justices of the peace, recorders, town clerks, and others among the class of officers referred to in section 3, authorized by the statutes of their States to take acknowledgments, and upon whom our statutes did not, prior to this act, confer that authority.

It follows that the action of the chancellor, sustaining the ninth ground of demurrer, holding the certificate of the notary public of another State sufficient without the additional certificate of the Secretary of State, or the clerk of a court of record, must be affirmed.

When the bill was filed, the holders of the deed of trust to Mrs. Lou A. Reeds had advertised and were about to sell under the power contained in the deed, and

First Nat. Bank v. Howard.

an injunction was obtained by complainant restraining the sale. The chancellor ordered a reference to ascertain the damages sustained in consequence of the injunction. The cause is remanded for further proceedings upon the order of reference. Appellants will pay the costs of appeal, the remaining costs to be adjudged by the court below.