RUMPH, CLERK *v.* LESTER LAND COMPANY.

4-7177                                              172 S. W. 2d 916

Opinion delivered July 5, 1943.

*McKay & McKay,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

McFADDIN, J. This appeal involves Act 169 of the 1943 General Assembly of Arkansas, which act is the Uniform Acknowledgment Act approved by the Governor and effective (by emergency) on March 4, 1943. The question here is whether Act 169 of 1943 supersedes the previous laws of this State on acknowledgments or merely provides an alternative law on that subject.

Appellant is the Circuit Clerk and Ex-Officio Recorder of Ouachita county, and on June 8, 1943, appellee tendered to the appellant a deed for recording. Appel-

lant refused to record the deed, claiming the acknowledgment was not duly authenticated under Act 169 of 1943, and therefore not subject to recording. The appellee brought this action for writ of mandamus to compel the filing and recording of the deed so tendered; and from a judgment for plaintiff (appellee), there is this appeal.

The deed tendered the appellant was a quitclaim deed covering lands in Ouachita county. The acknowledgment was taken and certified by a notary public in Caddo parish, Louisiana, and was as follows:

"ACKNOWLEDGMENT

"STATE OF LOUISIANA )
) SS
PARISH OF CADDO )

"Be it remembered, that on this day came and appeared in person before me, the undersigned, a notary public within and for the parish and state aforesaid, duly commissioned and acting L. S. McGee, to me well known as the grantor in the annexed and foregoing deed, and stated that he had executed the same for the consideration and purposes therein mentioned and set forth.

"Witness my hand and seal as such notary public on this 3rd day of June, 1943.

"Mary F. Jennings    SEAL

"My commission expires May 5, 1948."

Under § 1825 of Pope's Digest, this acknowledgment was duly certified and authenticated, because that section says: "The proof or acknowledgment of every deed or instrument of writing for the conveyance of any real estate shall be taken by some one of the following officers: . . .

"Second. When acknowledged or proved without this state and within the United States or their territories or the country known as the Indian Territory, or any of the colonies or possessions or dependencies of the United States, before any court of the United States, or of any state or territory, or Indian Territory, or colonies or possessions or dependencies of the United States, having

a seal, or a clerk of any such court, or before any notary public, or before the mayor of any incorporated city or town, or the chief officer of any city or town having a seal, or before a commissioner appointed by the Governor of this state.''

This court takes judicial notice of the laws of Louisiana (§ 5119, Pope's Digest), and therefore knows judicially that a notary public in Louisiana has a seal. Therefore, the said acknowledgment tendered was duly authenticated under § 1825 of Pope's Digest.

But § 9, subsection 2, of Act 169 of 1943 says: ''(2) If the acknowledgment is taken without this state, but in the United States, a territory or insular possession of the United States, the District of Columbia, or the Philippine Islands, the certificate shall be authenticated by a certificate as to the official character of such officer, executed, if the acknowledgment is taken by a clerk or deputy clerk of a court, by the presiding judge of the court or, if the acknowledgment is taken by a notary public, by a clerk of a court of record of the county, parish or district in which the acknowledgment is taken.''

In the deed tendered the appellant for recording, there was no such authentication under the said Act 169 of 1943; that is, there was no certificate by any clerk of a court of record in Caddo parish, Louisiana, showing the official character of the notary public who took the acknowledgment. In short, the deed was entitled to record under § 1825 of Pope's Digest unless that section has been repealed or amended by Act 169 of 1943. Has it? That is the question.

We hold that the said Act 169 of 1943 did not repeal, change or modify or in any way impair any law of this state; but provided only an alternative system of acknowledgments. In other words, Act 169 of 1943 is merely permissive. Acknowledgments may still be taken, certified and authenticated just as heretofore; on the other hand, acknowledgments may be taken, certified and authenticated under the Uniform Acknowledgment Act, which is Act 169 of 1943. Two ways are open: (1) the old way; or (2) the way under Act 169 of 1943. Either way reaches the same goal. *i. e.*, the right to be recorded.

The history of the Uniform Acknowledgment Act is enlightening. The first Uniform Acknowledgment Act was approved by the National Conference of Commissioners on State Laws in 1892, and is called herein the ''draft of 1892.'' This was an act of only 5 sections, and it was adopted by the states of Iowa, Louisiana, Massachusetts, Michigan and Tennessee. Section 1 of that act said in part: ''Either the forms of acknowledgment now in use in this state, or the following, may be used in the case of conveyances or other written instruments, whenever such acknowledgment is required or authorized by law for any purpose.''

This section was considered by the Supreme Judicial Court of Massachusetts, in 1930, in the case of *New England Bond & Mortgage Co.* v. *Brock,* 270 Mass. 107, 169 N. E. 803, 68 A. L. R. 37; and that court held that the adoption of the Uniform Acknowledgment Act left unimpaired the previously existing law in Massachusetts covering acknowledgments, saying: ''.  .  .  but as the statute permits the use of either, it cannot be said that the implication is controlling.''

Likewise, in the case of *First National Bank of Fulton* v. *Howard,* 148 Tenn. 188, 253 S. W. 961, the Supreme Court of Tennessee in 1923, held that the Uniform Acknowledgment Act (draft of 1892) did not repeal any previously existing laws of Tennessee concerning acknowledgments, saying of said act: ''It does not undertake to directly repeal, or to amend, the former laws on the subject, but merely provides cumulative methods for the acknowledgment and authentication of written instruments.'' In the Tennessee case the question was raised (as here) as to proof of authority of the officer taking the acknowledgment without the state; and the Tennessee Supreme Court said:

''This Act does not circumscribe the authority of any officer previously authorized to take and authenticate the acknowledgment of a written instrument  .  .  .

''By means of a uniform statute, providing cumulative methods and forms of proving written instruments, the Legislature sought to prevent, or to minimize, the confusion incident to these varying forms and methods

without impairing our own system, which through time and experience had become familiar to those within the state.''

Thus the ''draft of 1892'' of the uniform law had been construed as being merely cumulative of previously existing statutes, when in 1939 a second draft of the Uniform Acknowledgment Law was approved by the National Conference of Commissioners on Uniform State Laws, which draft consisted originally of fourteen sections. Later a section covering acknowledgments by persons in the armed forces was added as § 11; so the present uniform act contains fifteen sections, and is referred to as the ''draft of 1939.'' In 1940, the ''draft of 1892'' was declared obsolete by the National Conference of Commissioners on Uniform State Laws. The ''draft of 1939'' had been adopted in Maryland, Pennsylvania, Oregon and South Dakota when it was adopted in Arkansas as Act 169 of 1943, (with only one minor change in § 2, one minor change in § 7, and a substantial addition to § 11, and an emergency clause). Section 1 of the ''draft of 1939'' is the same as § 1 of Act 169 of 1943, and provides: ''Any instrument may be acknowledged in the manner and form now provided by the laws of this state or as provided by this Act.''

In the recent case of *Shultz* v. *Young, ante,* p. 533, 169 S. W. 2d 648, in considering the Uniform Joint Tort-feasors Act, we commented on the fact that the National Conference of Commissioners on Uniform State Laws had made prefatory notes to the Joint Tort-feasors Act expressive of their intention in its enactment and their opinion as to the meaning of its provisions; and we said: ''While we are not necessarily bound by this interpretation, it is very highly persuasive and should be adopted, unless we are clearly convinced that an erroneous interpretation has been given the act by the commissioners, or that it is contrary to the settled policy of this state as declared in the opinions of this court.''

So, in the case at bar we consider the commissioners' prefatory note to the ''draft of 1939'' of the Uniform Acknowledgment Act; and we find this language: ''In the Act adopted there is no attempt to say what instruments

shall be acknowledged—the Act merely provides that where by the laws of the state the acknowledgment of an instrument is required to be made, it may be made in the manner and form now provided by the law of the state or in the manner and form as prescribed by the Act. It should be explained to the Legislatures that there is no attempt to repeal the existing laws on the subject, but the act proposed is merely permissive in that an acknowledgment may be made either in the manner and form now provided by the law of the state or in the manner and form fixed by this Act. Thus a modern, uniform Act is being proposed for adoption in those states which desire it, without any attempt to alter or change the existing form and method in the event that form or method should be preferred over that proposed." (See Uniform Laws Annotated, vol. 9, p. 11, as published by Edward Thompson Company; and see Handbook of the National Conference of Commissioners on Uniform State Laws, and Proceedings of the 49th Annual Conference in 1939.)

The similarity of language in § 1 of the "draft of 1892" and § 1 of the "draft of 1939" is instantly apparent; and it will be observed that under the "draft of 1892" the court of Massachusetts and the court of Tennessee held the Act to be cumulative of the previously existing laws. Then the National Conference of Commissioners on Uniform State Laws, after those two decisions, prepared the "draft of 1939" and made the prefatory note that that draft was to be explained to the legislatures as an alternative system without any attempt to alter or change the existing form and method of acknowledgments, should the existing form be preferred over the Uniform Acknowledgment Act.

Section 13 of Act 169 of 1943 provides: "This Act shall be so interpreted as to make uniform the laws of those states which enact it."

We have reviewed the decision from Massachusetts and the decision from Tennessee on the 1892 draft, and the commissioners' prefatory note to the 1939 draft. These constitute the only available interpretations; and from these we have reached the inescapable and uniform conclusion that the Act 169 of 1943 does not repeal,

change or modify any law of this state, and provides only an alternative system for acknowledgments.

The decree of the lower court is, therefore, affirmed.

KNOX, J., disqualified and not participating.