**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 1, 2007

SUE H. APSEY and ROBERT APSEY, JR.,

      Plaintiff-Appellees/Cross-
      Appellants,

v

No. 129134

MEMORIAL HOSPITAL, doing business as
MEMORIAL HEALTHCARE CENTER

      Defendant.

and

RUSSELL H. TOBE, D.O., JAMES H.
DEERING, D.O., JAMES H. DEERING,
D.O., P.C., and SHIAWASSEE
RADIOLOGY CONSULTANTS, P.C.,

      Defendants-Appellants/Cross-
      Appellees.

---

BEFORE THE ENTIRE BENCH

KELLY, J.

This case presents the question of what authentication is necessary for out-of-state affidavits in Michigan. The parties ask us to determine whether MCL 600.2102(4) of the Revised Judicature Act (RJA) conflicts with the Uniform

Recognition of Acknowledgements Act (URAA), MCL 565.261 *et seq.*, and to discern the meaning of MCL 565.268 and its relation to MCL 600.2102(4). We find no conflict between the URAA and MCL 600.2102(4). The Legislature intended the URAA to serve as an alternative to MCL 600.2102(4) for authenticating out-of-state affidavits.

The Court of Appeals erred in concluding that MCL 600.2102(4) controlled because it is more specific. Therefore, it erroneously found that the signature of a notary public on an affidavit taken out of state must "be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court." MCL 600.2102(4). The Court of Appeals failed to give adequate weight and consideration to the language of MCL 565.268 that makes the URAA an additional method of attestation. *Apsey v Mem Hosp* (*On Reconsideration*), 266 Mich App 666; 702 NW2d 870 (2005). We reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Sue Apsey went to Memorial Healthcare Center for an exploratory laparotomy, which resulted in the removal of a large ovarian cyst. Medical complications followed this procedure. Plaintiffs allege that various acts of medical malpractice caused her to become septic, necessitating several follow-up surgeries.

2

Plaintiffs' affidavit of merit was prepared in Pennsylvania, and the notary public who signed it came from that state. A normal notarial seal appears on the document, but no other certification accompanied the seal. Plaintiffs later provided further certification, but not until after the statutory period of limitations had run on their medical malpractice cause of action.

Defendants moved for summary disposition of plaintiffs' claims.[1] The trial court granted the motion. It found that plaintiffs' failure to provide further certification as required by MCL 600.2102(4) rendered the out-of-state notarization insufficient. As a result, it ruled that the affidavit was a nullity. Without the affidavit, plaintiffs' complaint was not complete, and their cause of action failed for never having been properly commenced.

Plaintiffs moved for reconsideration, arguing that the affidavit was sufficient under MCL 565.262, but the trial court denied reconsideration. Although it did not give its reasoning, the court stated that compliance with MCL 565.262 would not have changed its decision.

On appeal, the Court of Appeals issued an opinion in April 2005. It stated that, if it were basing its decision solely on the URAA, the affidavit in this case would be valid. But it found that MCL 600.2102(4) changed this. It found

---

[1] Defendant Memorial Hospital is not an appellant in this Court. Subsequent references in this opinion to "defendants" are to defendants Russell H. Tobe, D.O.; James H. Deering, D.O.; James H. Deering, D.O., P.C.; and Shiawasee Radiology Consultants, P.C.

3

significance in the fact that MCL 600.2192 appears in the RJA, which deals with material presented to the courts. It reasoned that, on the other hand, the URAA appears among the statutes governing the conveyance of real property. It concluded that the URAA's emphasis is not on documents submitted to the courts.

The Court of Appeals also focused on the final sentence in MCL 565.268: "Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state." It reasoned that this sentence indicated that the URAA did not diminish the more formal and specific requirements of MCL 600.2102(4). And it found that these more formal requirements controlled when the affidavit is to be officially received and considered by the judiciary. Given this, the Court of Appeals affirmed the trial court's dismissal of the case in a published opinion per curiam of the Court of Appeals, issued April 19, 2005 (Docket No. 251110).

On June 2, 2005,[2] the Court of Appeals granted reconsideration and vacated its opinion. On June 9, 2005, it issued its published opinion on reconsideration. In a split decision, a majority of the Court of Appeals reaffirmed its past decision, issuing essentially the same opinion. But it decided to give the decision only prospective application. It found that it would be fundamentally unfair to dismiss plaintiffs' case because of plaintiffs' reliance on the URAA. It determined that the

---

[2] Unpublished order in Docket No. 251110.

interests of justice would best be served by allowing plaintiffs' claim to proceed. *Apsey*, 266 Mich App at 681-682.

Judge Mark Cavanagh dissented. He argued that the URAA provided an alternative method of proving that the notary actually notarized the document. He concluded that the URAA was a response to advances in technology and that the Legislature intended both it and MCL 600.2102 to provide legal methods of authenticating out-of-state affidavits. *Id*. at 685-686 (Cavanagh, J., dissenting).

Defendants sought leave to appeal in this Court, and plaintiffs sought leave to cross-appeal. This Court directed the clerk to schedule oral argument on whether to grant the applications or take other peremptory action pursuant to MCR 7.302(G)(1). 474 Mich 1135 (2006).

## II. STANDARD OF REVIEW

Issues of statutory interpretation are questions of law that this Court reviews de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). The fundamental rule and primary goal of statutory construction is to effectuate the Legislature's intent. *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005). To accomplish this task, we start by reviewing the text of the statute, and, if it is unambiguous, we will enforce the statute as written because the Legislature is presumed to have intended the meaning expressed. *Id*. Whenever possible, every word of a statute should be given meaning. And no

5

word should be treated as surplusage or made nugatory. *People v Warren*, 462 Mich 415, 429 n 24; 615 NW2d 691 (2000).

### III. THE URAA PROVIDES AN ALTERNATIVE METHOD OF ATTESTATION AND AUTHENTICATION

The URAA and MCL 600.2102(4) require different certifications for out-of-state affidavits. MCL 600.2102 provides, in part:

> In cases where by law the affidavit of any person residing in another state of the United States, or in any foreign country, is required, or may be received in judicial proceedings in this state, to entitle the same to be read, it must be authenticated as follows:
>
> * * *
>
> (4) If such affidavit be taken in any other of the United States or in any territory thereof, it may be taken before a commissioner duly appointed and commissioned by the governor of this state to take affidavits therein, or before any notary public or justice of the peace authorized by the laws of such state to administer oaths therein. *The signature of such notary public or justice of the peace, and the fact that at the time of the taking of such affidavit the person before whom the same was taken was such notary public or justice of the peace, shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court.* [Emphasis added.]

MCL 565.262(a) defines "notarial acts" under the URAA. It provides, in part:

> "Notarial acts" means acts that the laws of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking proof of execution and acknowledgments of instruments, and attesting documents. *Notarial acts may be performed outside this state for use in this state with the same effect as if performed by a notary public of this state by the following persons* authorized pursuant to the laws and regulations of other governments in addition to any other person authorized by the laws of this state:
>
> (*i*) A notary public authorized to perform notarial acts in the place in which the act is performed. [Emphasis added.]

It is undisputed that an affidavit is a "notarial act" that is controlled by the URAA.[3]

On first review, these statutes appear to be in conflict. The Court of Appeals majority was troubled by this and struggled to make the two fit together. But, in attempting to harmonize them, the Court of Appeals majority severely limited the reach and application of the URAA in ways unsupported by the text of the URAA and unintended by the Legislature. While it was appropriate for the Court of Appeals to read the statutes *in pari materia*,[4] the Court's method of doing so was incorrect. The Legislature has provided guidance on how to read the statutes in the URAA. The Court of Appeals should have used it before attempting other means of harmonizing the statutes.

---

[3] In fact, defendants concede that the URAA applies to all notarial acts. This would include affidavits offered in a judicial proceeding. Defendants' concession undermines any argument that MCL 600.2102 was retained to carve out an exception to the URAA for affidavits used in judicial proceedings.

[4] "'The object of the rule *in pari materia* is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject.'" *Jennings v Southwood*, 446 Mich 125, 137; 521 NW2d 230 (1994), quoting *Wayne Co v Auditor General*, 250 Mich 227, 233; 229 NW 911 (1930).

> Statutes *in pari materia* are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965).]

In MCL 565.268, the Legislature indicated how the URAA was meant to interact with MCL 600.2102. MCL 565.268 provides:

> A notarial act performed prior to the effective date of this act is not affected by this act. *This act provides an additional method of proving notarial acts.* Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state. [Emphasis added.]

Although the Court of Appeals majority took note of MCL 565.268, it focused on the last sentence to the exclusion of the others. It reasoned that, because the URAA does not diminish MCL 600.2102(4), this must mean that the Legislature intended MCL 600.2102(4) to trump the requirements of the URAA. But this reasoning is not supported by the complete text of MCL 565.268.

The final sentence must be read in light of what precedes it. The second sentence of MCL 565.268 indicates that the URAA is an additional or alternative method of proving notarial acts. As an "additional" method, the URAA does not replace the prior method. Instead, it is intended to stand as a coequal with it. Because the two methods are alternative and coequal, the URAA does not diminish or invalidate "the recognition accorded to notarial acts by other laws of this state." MCL 565.268. Simply, MCL 600.2102(4) is not invalidated by the URAA. It remains an additional method of attestation of out-of-state affidavits. Because the two methods exist as alternatives, a party may use either to validate an affidavit.

8

Under the doctrine of *noscitur a sociis*,[5] a phrase must be read in context. A phrase must be construed in light of the phrases around it, not in a vacuum. Its context gives it meaning. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002). Similarly, it is a well-settled rule of law that, when construing a statute, a court must read it as a whole. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003); *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982); *Layton v Seward Corp*, 320 Mich 418, 427; 31 NW2d 678 (1948). Without proper adherence to this rule, the Court of Appeals could not effectuate the intent behind the URAA.

The Court of Appeals rejected the interpretation we use in the belief that reading the URAA as an alternative method of authenticating out-of-state affidavits would render MCL 600.2102(4) nugatory. Of course, a reviewing court should not interpret a statute in such a manner as to render it nugatory. *Warren*, 462 Mich at 429 n 24. A statute is rendered nugatory when an interpretation fails to give it meaning or effect.[6] But our interpretation of MCL 565.268 does no such damage to MCL 600.2102(4).

---

[5] "It is known by its associates." Black's Law Dictionary (7th ed).

[6] Black's Law Dictionary (7th ed) defines "nugatory" as "of no force or effect; useless; invalid."

9

Because the URAA does not repeal MCL 600.2102, the latter provision remains in effect as a viable means of authenticating out-of-state affidavits. If a party chooses to use it, the affidavit can be admitted as evidence just as if the party had decided to follow the URAA. MCL 600.2102(4) has the same meaning and effect after the enactment of the URAA as it did before. At both times, it was a viable means of authenticating an out-of-state affidavit.

We question how the Legislature could have signaled more clearly its intent that the URAA should function as an alternative to MCL 600.2102 than by stating that the URAA "provides an additional method of proving notarial acts." MCL 565.268. The Legislature need not repeal every law in a given area before it enacts new laws that it intends to operate in addition to their preexisting counterparts. The Legislature has the power to enact laws to function and interact as it sees fit. And when it does so, this Court is bound to honor its intent.

In this case, the Legislature made its intent clear through MCL 565.268. By enacting the URAA, it wished to create an additional method of authentication.[7] We must respect this decision. Despite its likely decreased use in

_____

[7] The brief amicus curiae of the Negligence Section of the State Bar of Michigan makes the uncontested assertion that 24 states and the District of Columbia will not comply with the requirements of MCL 600.2102(4). This list includes heavily populated states such as California, Florida, Massachusetts, New Jersey, and Texas. This fact may have provided additional motivation for the Legislature to create an additional method of authenticating affidavits.

10

light of the URAA's less rigorous requirements, MCL 600.2102(4) still has meaning. Hence, it is not rendered nugatory.[8]

Also, MCL 600.2102(4) is not rendered nugatory because it provides for the Governor to appoint a commissioner to authenticate out-of-state affidavits. Under the statute's language, Michigan's Governor could appoint a person who is not a notary to authenticate affidavits in any state or territory of the United States. MCL 600.2102(4). Such affidavits likely would not be admissible under the URAA. But they could be used because of MCL 600.2102(4). Given this, MCL 600.2102 is not rendered nugatory under our interpretation of the URAA. Instead, it has valid meaning and effect, even if it is rarely used.

By contrast, a strict application of MCL 600.2102 as the only method of authenticating affidavits would render part of MCL 565.268 nugatory. Only by ignoring the sentence "[t]his act provides an additional method of proving notarial

_____

[8] Justice Markman accuses us of rewriting and rendering nugatory the phrase "must be authenticated" as used in MCL 600.2102. This opinion does not render the phrase nugatory. As we have repeatedly noted, MCL 600.2102 still can be used as an alternative means of authentication. If a party chooses to use this method, the affidavit still "must be authenticated" in the same manner. As such, the phrase continues to have meaning.

This Court is not rewriting the statute. Instead, it is effectuating the intent behind the language written by the Legislature and considering MCL 600.2102 together with the URAA. The language of the URAA indicates that the Legislature intended to change MCL 600.2102 to render it no longer the exclusive means of authenticating out-of-state affidavits. To discern the true intent of the Legislature, the statutes must be read together, and no one section should be taken in isolation. This is where Justice Markman's review fails.

11

acts" could we arrive at defendants' desired outcome. As discussed earlier, there is no reason to do so when we can provide both statutes full meaning as alternatives to one another. Therefore, we reverse the judgment of the Court of Appeals.[9]

MCL 565.268 lays out how the Legislature intended to deal with MCL 600.2102 and the URAA. The URAA is an additional method of authenticating

---

[9] Courts in other states have faced issues similar to the one we face today. They have consistently come to the conclusion that the uniform act creates an alternative means of authentication. *Rumph v Lester Land Co,* 205 Ark 1147; 172 SW2d 916 (1943), provides an excellent example. In that case, an Arkansas statute that predated the enactment of the uniform acknowledgement act required that

> "the certificate *shall be authenticated* by a certificate as to the official character of such officer, executed, if the acknowledgment is taken by a Clerk or Deputy Clerk of a court, by the presiding judge of the court or, if the acknowledgment is taken by a Notary Public, by a Clerk of a Court of Record of the County, Parish or District in which the acknowledgment is taken." [*Id.* at 1149, quoting § 9(2) of 1943 Ark Acts 169 (emphasis added).]

The Arkansas Supreme Court concluded that, despite this language, the statute was merely a system of acknowledgement that was an alternative to the uniform acknowledgement act:

> In other words, Act 169 of 1943 is merely permissive. Acknowledgments may still be taken, certified and authenticated just as heretofore; on the other hand, acknowledgments may be taken, certified and authenticated under the Uniform Acknowledgment Act, which is Act 169 of 1943. Two ways are open: (1) the old way; or (2) the way under Act 169 of 1943. Either way reaches the same goal: *i. e.,* the right to be recorded. [*Rumph,* 205 Ark at 1149.]

(continued…)

12

out-of-state affidavits, and either method may be used as an alternative to the other.[10]   Because plaintiffs complied with the URAA, their affidavit was admissible.

### IV. CONCLUSION

Because of the unambiguous language of MCL 565.268, there is no conflict between the URAA and MCL 600.2102(4).   The URAA was enacted as an additional means of dealing with all notarial acts.   This includes affidavits. Because of the unambiguous language of MCL 565.268, the URAA provides an alternative method of authenticating out-of-state affidavits.   The Court of Appeals erred in holding that plaintiffs' affidavit was insufficient and inadmissible despite its compliance with the URAA.   We reverse the judgment of the Court of Appeals

---

(…continued)
See also *First Nat'l Bank v Howard*, 148 Tenn 188; 253 SW 961 (1923), and *Valley Nat'l Bank of Arizona v Avco Dev Co*, 14 Ariz App 56; 480 P2d 671 (1971).

[10] We strongly disagree with Justice Markman that the "most obvious means of reconciling and harmonizing" these two provisions is to find that MCL 600.2102 carves out an exception to the URAA. *Post* at 3.  Again, this fails to give effect to MCL 565.268.  The "most obvious" means of accomplishing this task is to follow the instructions of the Legislature and treat the provisions as alternative means of authentication.

and remand this case to the trial court for further proceedings. We do not retain jurisdiction.

Marilyn Kelly
Clifford W. Taylor
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan

S T A T E  O F  M I C H I G A N

SUPREME COURT

SUE H. APSEY and ROBERT APSEY, JR.,

       Plaintiff-Appellees/Cross-
       Appellants,

v                                       No. 129134

MEMORIAL HOSPITAL, doing business as
MEMORIAL HEALTHCARE CENTER

       Defendant.
and

RUSSELL H. TOBE, D.O., JAMES H.
DEERING, D.O., JAMES H. DEERING,
D.O., P.C., and SHIAWASSEE
RADIOLOGY CONSULTANTS, P.C.,

       Defendants-Appellants/Cross-
       Appellees.

_____

KELLY, J. (*concurring*).

Given that I authored it, I fully concur in the majority opinion. I write this separate concurrence to address additional reasons why I believe the Court has reached the correct conclusion in this case. The following further explains why the two means of authentication continue to coexist and demonstrates why the Legislature did not simply repeal MCL 600.2102(4). It also offers an added explanation of how the Court of Appeals attempt to harmonize MCL 600.210(4)

with the Uniform Recognition of Acknowledgements Act actually subverted the Legislature's intent.

Our interpretation of MCL 600.2102(4) and the Uniform Recognition of Acknowledgements Act (URAA), MCL 565.261 *et seq*., is supported by certain written matter that was supplied to the Legislature before it enacted the URAA. Of particular importance is the Michigan Law Revision Commission's report and recommendations. The commission was created by the Legislative Council Act (LCA), MCL 4.1101 *et seq*. It is charged with recommending changes in the law to the Legislature. MCL 4.1403. The LCA also created the Legislative Service Bureau. MCL 4.1105. It is this bureau's responsibility to compare pending bills with existing laws for the purpose of avoiding conflicts. MCL 4.1108(a). The bureau may also recommend legislation to the Legislative Council or the commission. MCL 4.1109. Along with its recommendations to the Legislature, the Legislative Council may submit proposed bills to implement the recommendations. MCL 4.1104(4).

The Michigan Law Revision Commission brought no conflicts to the Legislature's attention in its report on the URAA. Rather, the report specifically advised the Legislature that it need not repeal any laws in order to fully effectuate the URAA. It stated, "The act does not require the amendment or repeal of any existing legislation in Michigan but the old Uniform Act adopted in 1895 . . . ." Michigan Law Revision Commission, Third Annual Report, 1968. The reason no

2

such action had to be taken was because of proposed language that later became MCL 565.268.[1]

Given the specialized function of the Michigan Law Revision Commission, its report carries extra weight in assisting a court's interpretation of statutes. As the Legislature created the commission specifically to aid it in drafting legislation and identifying conflicts in the law, its report is a particularly useful tool in discerning legislative intent.

In this case, the report explains why MCL 600.2102 was retained. The Legislature did not repeal it because the commission advised that there was no need to do so. As the URAA was meant to provide an additional method of authentication, there was no need to repeal MCL 600.2102. Instead, by enacting MCL 565.268, the URAA made clear that there would be an additional and alternative method of authenticating affidavits. The commission's report belies the argument that, by retaining MCL 600.2102, the Legislature intended it to trump the URAA.

---

[1] MCL 565.268 provides:

> A notarial act performed prior to the effective date of this act is not affected by this act. *This act provides an additional method of proving notarial acts.* Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state. [Emphasis added.]

The report specifically indicated to the Legislature that the National Conference of Commissioners on Uniform State Laws prepared the URAA. Michigan Law Revision Commission, Third Annual Report, 1968. The national commissioners prepared a prefatory note to the URAA to aid in its uniform enactment. This note is also a useful tool in discerning the legislative intent behind the URAA and in explaining why both it and MCL 600.2102 remain good law. This is because, like the Michigan Law Revision Commission's report, it told the Legislature that it need not overturn existing statutes to fully effectuate the URAA. The prefatory note stated that there was no need to amend existing acknowledgement law because the URAA was "in addition to" other recognition statutes. This demonstrates why the Legislature took no action to repeal MCL 600.2102.

The advice provided by these materials explains why the Legislature left MCL 600.2102 on the books when it adopted the URAA. And it informs our interpretation of the language of MCL 565.268. This provision of the URAA was included to streamline the enactment process. It did so by making the URAA a method of dealing with notarial acts that was additional to any existing before its enactment, including MCL 600.2102.

The Court of Appeals attempted to harmonize MCL 600.2102 with the URAA. But its attempts conflicted with the Legislature's intent that the URAA be interpreted as it has been in other states that have enacted it. MCL 565.269

4

provides: "This act shall be so interpreted as to make uniform the laws of those states which enact it." Use of the term "shall" in MCL 565.269 is a mandatory directive. *Burton v Reed City Hosp Corp*, 471 Mich 745, 752; 691 NW2d 424 (2005).

But far from making the URAA uniform, the Court of Appeals interpretation creates a gaping exception applicable only in Michigan. Contrary to the requirements of MCL 565.269, the Court of Appeals actually isolated Michigan from every other state that has enacted the URAA. The language of MCL 565.269 helps demonstrate that this could not have been the Legislature's intended interaction between the URAA and MCL 600.2102. The Court of Appeals erred in failing to follow the directive of MCL 565.269.

These materials provide substantial evidence that this Court properly interpreted the statutes in this case.

Marilyn Kelly
Michael F. Cavanagh

5

S T A T E   O F   M I C H I G A N

SUPREME COURT

SUE H. APSEY and ROBERT APSEY, JR.,

       Plaintiff-Appellees,
       Cross Appellants,

v                                  No. 129134

MEMORIAL HOSPITAL, doing business as
MEMORIAL HEALTHCARE CENTER

       Defendant.
and

RUSSELL H. TOBE, D.O., JAMES H.
DEERING, D.O., JAMES H. DEERING,
D.O., P.C., and SHIAWASSEE
RADIOLOGY CONSULTANTS, P.C.,

       Defendants-Appellants, Cross-
       Appellees.

_____

YOUNG, J. (*concurring in the result only*).

     I concur in the result to reverse the Court of Appeals.  This is a case in which the majority and the dissent offer two compelling but competing constructions of the Uniform Recognition of Acknowledgements Act (URAA) and MCL 600.2102 of the Revised Judicature Act (RJA), and, in my view, neither

construction is unprincipled.[1]  Both sides invoke legitimate, well-established canons of statutory construction to justify their respective positions.  In short, this is a rare instance where our conventional rules of statutory interpretation do not yield an unequivocal answer regarding how to reconcile the provisions of the two statutes that appear to conflict.

The majority honors the plain, unambiguous language in the more recently enacted URAA, noting that the statute explicitly states that it creates an "additional method" of authenticating notarial acts.[2]  The majority theorizes,

---

[1] It is not just the members of this Court who have struggled to reconcile the provisions of these two statutes.  The Court of Appeals has twice considered this issue.  Initially, it held that the more specific requirements of the RJA controlled over the requirements of the URAA and affirmed summary disposition in favor of defendants. *Apsey v Mem Hosp*, unpublished opinion per curiam of the Court of Appeals, issued April 19, 2005 (Docket No. 251110).  After granting reconsideration, one member of the original panel urged a different reading of the statutes, while a majority of the panel continued to hold that the RJA controlled over the URAA, but reversed the trial court and gave plaintiffs an opportunity to remedy the defect. *Apsey v Mem Hosp (On Reconsideration)*, 266 Mich App 666; 702 NW2d 870 (2005).  Moreover, in their briefs filed with this Court, the parties themselves and the numerous amici curiae aligning with either side have thoroughly debated the competing approaches to construing the URAA and the RJA.  Also, the Court of Appeals subsequently has questioned the correctness of its published decision in this case and, despite the fact that this case was pending before this Court, it took the unorthodox step of convening a special conflict panel to consider whether its decision in this case was correct.  See *White v Barbara Ann Karmanos Cancer Institute*, order of the Court of Appeals, entered February 23, 2007 (Docket No. 270320).

[2] MCL 565.268.  Importantly, the URAA definition of "notarial acts" is very broad and encompasses those also covered by the RJA.  MCL 565.262(a) ("'Notarial acts' means acts that the laws of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking

(continued…)

2

correctly I believe, that the Legislature, using the appropriate statutory language to signal its intent, is capable of prescribing a restrictive method of authentication then later approving a more lenient method as an alternative to the prior enactment without expressly repealing that earlier statute. I have no doubt of the Legislature's ability to provide an alternative, more lenient statutory regime, without having to negate a more restrictive one. The majority believes that the Legislature has clearly signaled such an intent in this case.

The dissent responds, first, that MCL 600.2102 dictates that out-of-state affidavits that are to be received in judicial proceedings "must be authenticated" in accordance with its more stringent requirements, and, second, that the more specific provision, that of the RJA, must govern the more general provision, the URAA, when the two overlap. The dissent also believes that the "additional method" language is an insufficient signal that the Legislature intended for both statutes to coexist as alternatives. Moreover, the dissent concludes that the majority's construction renders "nugatory" the more restrictive RJA.

The dissent labels the majority's approach a "non-interpretation" and a "non-harmonization" of the URAA and the RJA, while criticizing my characterization of it as a reasonable application of basic principles of statutory

---

(…continued)
proof of execution and acknowledgements of instruments, and attesting documents.").

3

construction.[3]  In the process, the dissent recoils at the suggestion that his approach and the majority's approach are reasonable alternatives, as he believes that his interpretation is the only one that truly harmonizes the URAA and the RJA.

To the contrary, the dissent fails to explain why his "harmonization" is pre-eminent where the dissent gives little, if any, weight to the URAA's explicit statement that it "provides an additional method of proving notarial acts."[4]  Given that the URAA expressly encompasses *all* notarial acts, if the URAA's methods are not "additional" to the RJA's methods where the statutes overlap, then I cannot conceive that the phase "additional method" has any significance.  The dissent criticizes the majority for failing to give effect to the word "must," but meanwhile falls prey to the same criticism with respect to the  phrase "additional method."  The dissent's approach cannot be the only true means of harmonization where it criticizes the majority for rendering statutory language nugatory and proceeds to do the same.  The dissent does not explain why the Legislature *could not* have created an all-encompassing alternative methodology for proving notarial acts and thus why his construction is *the* superior harmonization of the statutes.  The Legislature apparently intended the URAA and the RJA to coexist as alternatives where they overlap, and the majority has attempted to respect the Legislature's

---

[3] *Post* at 6.

[4] MCL 565.268.

will.  Therefore, I believe that the best "harmonization" of the two statutes allows both to coexist, as the Legislature apparently intended.

I also disagree with the dissent that the URAA renders nugatory the provisions of the RJA merely because, as a matter of practice, the public and the bar might preferentially choose to use the more liberal statute.  If the Legislature can create two differing methods to accomplish the same act, then the *fact* that one is preferred does not render the other "nugatory" in a *legal* sense.  See *The American Heritage Dictionary of the English Language, New College Edition* (1978) (defining "nugatory" as "[h]aving no power; invalid; inoperative: *a nugatory statute*").  Foreign affidavits to be used in judicial proceedings can still be certified under the RJA.  The RJA will be neither invalid nor inoperative as a result of this decision.

Although the majority and the dissent readily expose the flaws apparent in the other's analysis of the URAA and the RJA, I cannot conclude that either construction is entirely unfaithful to the statutory language or departs from the exacting judicial philosophy that has marked this Court in recent years.  Since I believe that the Legislature has created in the URAA an alternative to the RJA for proving notarial acts, including those required in judicial proceedings, I decline to join the dissent.  Like the dissent, I believe that the Legislature should dispel much of the confusion generated by the URAA and the RJA for the benefit of future litigants.  I hope it will do so.  However, until that time, I favor a resolution that is

5

least unsettling and disruptive to the rule of law in Michigan, and so I concur with the result to reverse the Court of Appeals.

Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

SUE H. APSEY and ROBERT APSEY, JR.,

        Plaintiff-Appellees/
        Cross Appellants,

v                                    No. 129134

MEMORIAL HOSPITAL, doing business as
MEMORIAL HEALTHCARE CENTER

        Defendant.
and

RUSSELL H. TOBE, D.O., JAMES H.
DEERING, D.O., JAMES H. DEERING,
D.O., P.C., and SHIAWASSEE
RADIOLOGY CONSULTANTS, P.C.,

        Defendants-Appellants/   Cross-
        Appellees.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent. I would deny leave to appeal and uphold the judgment of the Court of Appeals. I would also call on the Legislature to promptly clarify its intentions concerning the need for the certification of foreign affidavits used in Michigan judicial proceedings.

Although the range of support from amici curiae for plaintiff's cross-application is impressive-- encompassing the Michigan Trial Lawyers Association, the Michigan Defense Trial Counsel, and the State Bar of Michigan-- their briefs

and the majority opinion are ultimately unpersuasive, in my judgment, because each fails to accord *any* meaning to MCL 600.2102, which states that foreign affidavits "must be authenticated" by the procedures set forth in that law. It is not to read this law "technically," "narrowly," "crabbedly," "literally," "unreasonably," or "conservatively" to conclude that "must be authenticated" means what it says. The majority opinion would simply transform what the Legislature has written into "*may* be authenticated."[1] Although I am sympathetic to this result, and would urge the Legislature to consider an amendment to that effect, it is not within this Court's authority to modify the clear language of the law, even where there is a consensus within the bar for such a result.

Unquestionably, considerable confusion is introduced by the Uniform Recognition of Acknowledgments Act (URAA), which states, in part:

> This act provides an additional method of proving notarial acts. Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state. [MCL 565.268.]

---

[1] The majority opinion asserts that its harmonization "does not render the phrase nugatory" because "[i]f a party chooses to use this method, the affidavit still 'must be authenticated' in the same manner." *Ante* at 11 n 8. But, of course, the majority opinion's specified condition-- "if a party chooses to use this method"-- drains the remainder of its statement of any coherence, for this is the very question in controversy-- *must* a party choose to use this method? The Legislature says "yes," and the majority opinion says "no." The majority opinion does "equity" in the guise of statutory interpretation, distorting both legal concepts in the process.

However, the most obvious means of reconciling and harmonizing MCL 600.2102 and MCL 565.268[2] is to recognize that the former-- applicable only to the use of affidavits in *judicial proceedings*-- is the more specific of these provisions, and therefore the latter is best understood as applicable only to the use of affidavits outside the scope of judicial proceedings. Such a harmonization, while imperfect as all harmonizations must be, respects the language of § 2102, while also respecting the language of the URAA, albeit outside the judicial sphere. While a perfect harmonization of these provisions is not possible, a harmonization that gives reasonable meaning to both provisions should be preferred to a "harmonization" that gives no meaning at all to one provision. In contrast, the majority's "harmonization," while fully respecting the language of the URAA, would accord *no* respect to the language of § 2102. As the Court of Appeals correctly observed, the majority's interpretation "basically makes the certification requirement in MCL 600.2102(4) worthless or nugatory." *Apsey v Mem Hosp (On Reconsideration)*, 266 Mich App 666, 677 n 4; 702 NW2d 870 (2005).

---

[2] The majority states, "We question how the Legislature could have signaled more clearly its intent that the URAA should function as an alternative to MCL 600.2102 than by stating that the URAA 'provides an additional method of proving notarial acts.'" *Ante* at 10. I agree with this. However, it is equally true that the Legislature could hardly "have signaled more clearly its intent" concerning § 2102 than by providing that certain notarial acts "must be" authenticated under the procedures of that provision. The issue here is not the clarity of the URAA but how to reconcile it with the equally clear § 2102.

In response to Justice Young's concurring opinion, I do not assert that the majority opinion renders § 2102 nugatory "merely because, as a matter of practice, the public and the Bar might preferentially choose to use the more liberal statute." *Ante* at 5. Rather, I assert this because the majority opinion replaces "must" with "may," and thereby renders § 2102 "trifling, of little or no consequence, inconsequential," *Webster's New Collegiate Dictionary* (4th ed)-- that is, "nugatory." In so doing, the majority opinion departs from what the concurring justice correctly describes as "the exacting judicial philosophy that has marked this Court in recent years." *Ante* at 5.

The concurring opinion also errs in characterizing the dispute between the majority and dissenting opinions as one in which the majority adheres to the dispositional rule that "later-in-time" statutes control while the dissent adheres to the rule that more specific statutes control. As useful as such maxims may be where statutes stand in irreconcilable conflict and where it must be determined which is to trump the other, it is *first* the obligation of a court to seek to harmonize or reconcile statutes so that *neither* must be trumped out of existence. "To make laws agree or harmonize with laws is the best mode of interpreting them." Halkerston, Maxims 70; see also *Nowell v Titan Ins Co*, 466 Mich 478, 483; 648 NW2d 157 (2002) ("In . . . a case of tension, . . . it is our duty to, if reasonably possible, construe them both so as to give meaning to each; that is, to harmonize them.").

4

That is, the process of harmonization, which is simply another name for one aspect of the process of interpretation, *precedes* the application of dispositional maxims of the sort identified by the concurring opinion. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 477 (2003). This opinion undertakes to harmonize; the majority opinion does not. No "harmonization" can fairly be said to occur where one statute ends up utterly without practical meaning or effect. *Koenig v South Haven*, 460 Mich 667, 677; 597 NW2d 99 (1999) ("[A] court's duty is to give meaning to all sections of a statute and to avoid, if at all possible, nullifying one by an overly broad interpretation of another."). "Words . . . ought to be interpreted in such a way as to have some operation." 8 Coke Reports 94a. "Words are to be received with effect, so that they may produce some effect." Bacon, Maxims, reg 3. "Words should be understood effectively." *Rickets v Livingston*, 2 Johns Cas 97, 101 (NY Sup Ct, 1800). If the majority opinion does not genuinely render § 2102 nugatory in the view of the concurring opinion, it is difficult to imagine when a statue would *ever* be rendered nugatory by judicial construction. A statute need not be physically ripped out of a legal code and set ablaze in a bonfire in order to be rendered nugatory; it is merely necessary that a statute be rendered of no consequence. Here, the operative word of § 2102 is transformed from "must" to "may," and there is simply *no* circumstance in which the statutory shell that remains could ever have any applicability or pertinence separate from the URAA. The concurring opinion fails

5

to differentiate between an imperfect harmonization-- which is what all harmonizations must necessarily be-- and a non-harmonization. The difference is the difference between an interpretation and a non-interpretation.

The § 2102 "problem"-- and I would acknowledge it as such-- is easily and quickly remediable by the Legislature. By contrast, the "problem" caused to our jurisprudence by this Court reading the law in a manner that is unsupported by its language is considerably less easily and quickly remediable.

Stephen J. Markman